IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARY YOUNG, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 2:14cv1209-WKW-GMB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Mary Young is before the court on a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Doc. 1.[1]

### I. INTRODUCTION

On November 4, 2013, Young pled guilty under a plea agreement to one count of conspiracy to defraud the United States by electronically filing a multitude of fraudulent tax returns over a period of three years, in violation of 18 U.S.C. § 286, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. On February 20, 2014, the district court sentenced Young to 87 months in prison, comprising consecutive terms of 63 months for the § 286 offense and 24 months for the § 1028A offense.

Young appealed, arguing that the district court erred in increasing her base offense level by two levels for use of sophisticated means because the tax fraud conspiracy was not sufficiently complex to warrant the enhancement. On October 7, 2014, by unpublished opinion, the Eleventh Circuit affirmed Young's conviction and sentence. *See United States v. Young*, 568 F. App'x 556

---

[1] References to document numbers ("Doc.") are to those assigned by the Clerk of Court in this action. Page references are to those assigned by CM/ECF.

(11th Cir. 2014). Young did not petition the Supreme Court for certiorari review.

On December 3, 2014, Young filed this § 2255 motion. She presents the following claims in her motion:

1. Trial counsel rendered ineffective assistance by failing to—

    (a) object to the loss amount attributed to her for sentencing purposes;

    (b) object to the number of victims attributed to her for sentencing purposes; and

    (c) submit mitigating evidence in objecting to the sophisticated means enhancement at sentencing.

2. Her sentence violated the Supreme Court's holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), because the district court applied sentencing enhancements based on judicial factfinding.

Doc. 1 at 4–8; Doc. 2 at 2–15.

In August 2016, Young amended her motion to add a claim that she is entitled to a sentence reduction in light of the November 1, 2015 amendment (Amendment 794) to the mitigating role adjustment in U.S.S.G. § 3B1.2. Doc. 16.

After reviewing the pleadings, evidentiary materials, and relevant law, the court concludes that no evidentiary hearing is required and that under Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, Young's § 2255 motion should be denied.

## II. DISCUSSION

**A.    General Standard of Review**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is

otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.     Claims of Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *see Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Id.* at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief must be denied. *Strickland*, 466 U.S. at 687. Therefore, once a court decides that one of the requisite showings has not been made, it need not pass judgment on the other prong. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. *Counsel's Failure to Object to Loss Amount*

Young contends that her trial counsel rendered ineffective assistance by failing to object to the loss amount attributed to her for sentencing purposes. Doc. 1 at 7–8; Doc. 2 at 10–12.

The district court accepted the United States Probation Office's determination that the loss attributable to Young for her criminal conduct—consisting of Young's participation in a fraudulent tax refund scheme over a period of three years—was approximately $721,041. *See* Presentence Investigation Report ("PSR") at 9, ¶ 27. Applying § 2B1.1(b)(1) of the Sentencing Guidelines, the court imposed a 14-level enhancement of Young's offense level.[2] *See* U.S.S.G. §

---

[2] Under U.S.S.G. § 2B1.1(b)(1), the offense level for a defendant convicted of certain economic fraud offenses is subject to a specific offense characteristic enhancement if the loss from the criminal conduct exceeded $5,000, with the extent of the enhancement determined by the amount of the loss. U.S.S.G. § 2B1.1(b)(1). The Sentencing Guidelines direct the district court to consider a defendant's relevant conduct, nor merely the charged conduct, in

2B1.1(b)(1)(H), (I) (providing for 14-level specific offense characteristic enhancement where the loss is more than $400,000 but less than $1,000,000).

At the sentencing hearing, IRS Special Agent Chris Forte testified regarding his investigation of the fraudulent tax refund scheme that Young operated in concert with her husband. *See* Doc. 11-6 at 11–58. Young and her husband would steal the personal information of individuals (including their names, birthdates, and Social Security numbers) and use the stolen information to prepare and file false tax returns in these individuals' names, claiming tax refunds from the IRS. They would request that the refunds be directed to prepaid debit cards registered in the names of their identity-theft victims. Young and her husband had the debit cards sent to various local mailing addresses and then collected the cards at these addresses. After the IRS deposited the refunds on the debit cards, Young and her husband would use the cards to withdraw funds from different ATM machines or to make purchases at area businesses. *See, e.g.*, Doc. 11-6 at 11–22. For the period investigated by Agent Forte, Young and her husband filed returns with $721,041 in fraudulent refund claims and received $415,070 in actual payouts from the IRS. Doc. 11-6 at 17. Exhibits introduced at the sentencing hearing reflected that, during a three-year period, Young and her husband filed over 300 fraudulent tax returns for the 2009 through 2011 tax years using the names, birthdates, and Social Security numbers of more than 250 people whose identities they had stolen. Doc. 11-5 at 1–5.

Application notes for U.S.S.G. § 2B1.1 clarify that, with respect to fraud offenses, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. n.3(A). "Actual loss" is

---

calculating loss. *United States v. Foley*, 508 F.3d 627, 633 (11th Cir. 2007); *see* U.S.S.G. § 1B1.3(a)(1)(A) & (B) (defining relevant conduct to include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id*., cmt. n.3(A)(i). "Intended loss," on the other hand, means "the pecuniary harm that was intended to result from the offense," including pecuniary harm "that would have been impossible or unlikely to occur."[3] *Id*., cmt. n.3(A)(ii).

Here, the Government presented evidence that Young, in concert with her husband, filed tax returns containing $721,041 in fraudulent refund claims and received $415,070 in IRS payouts. The pecuniary harm intended by Young, then, was $721,041. *See* U.S.S.G. § 2B1.1, cmt. n.3(A)(ii). Because the intended loss from the fraudulent tax refund scheme was more than $400,000 but less than $1,000,000, the district court properly applied the 14-level enhancement under § 2B1.1(b)(1) to Young. *See* U.S.S.G. § 2B1.1(b)(1)(H), (I).

Although Young maintains that her counsel was ineffective for failing to object to the loss amount attributed to her, she neither demonstrates that the district court's finding was erroneous nor identifies a plausible argument that her counsel might have presented that was reasonably likely to change the district court's loss determination. She sets forth no particular evidence that her counsel should have offered in opposing the loss determination and points to no facts indicating that the loss determination was inaccurate. Failing to show either deficient performance by counsel or resulting prejudice, Young is not entitled to relief based on this claim of ineffective assistance of counsel.

Young also excepts to her trial counsel's failure to object to the restitution amount of $415,070 that the district court ordered be paid by Young to the IRS. This amount was based on

---

[3] In the context of fraud offenses, sentencing based on intended loss is appropriate even where no actual loss occurred. *United States v. Menichino*, 989 F.2d 438, 442 (11th Cir. 1993); *see, e.g., United States v. Willis*, 560 F.3d 1246, 1250-51 (11th Cir. 2011) (finding that intended loss included defendant's fraudulent claims to FEMA that were not paid).

6

the actual refund payouts the IRS made to Young and her husband.[4]   Young's argument here suffers from the same infirmity as her argument regarding the district court's loss determination. She sets forth no arguments or evidence that her counsel might have offered in opposing the restitution amount and points to no facts indicating that the restitution amount was inaccurate. Consequently, she fails to demonstrate deficient performance by counsel or resulting prejudice.

### 2. *Counsel's Failure to Object to Number of Victims*

Young next contends that her trial counsel rendered ineffective assistance by failing to object to the number of victims attributed to her for sentencing purposes. Doc. 1 at 4–5; Doc. 2 at 4–7.

The district court accepted the Probation Office's determination that Young's criminal conduct involved 250 or more victims because she used over 300 stolen identities in her tax fraud scheme. *See* PSR at 9, ¶ 28.  Applying § 2B1.1(b)(2)(C) of the Sentencing Guidelines, the court imposed a six-level enhancement to Young's offense level. *See* U.S.S.G. § 2B1.1(b)(2)(C) (providing for a six-level specific offense characteristic enhancement for certain economic fraud offenses involving 250 or more victims).  Application Note 4(E) to § 2B1.1(b)(2), defines a "victim" for economic fraud crimes involving identify theft as "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B 1.1 cmt. n.4(E)(ii).

Agent Forte's testimony at the sentencing hearing established that Young, in concert with her husband, operated a fraudulent tax refund scheme involving filing a multitude of falsified tax returns using stolen personal identification information from numerous individuals.  Agent Forte testified that he interviewed many of these individuals, and they told him they were victims of

---

[4] Restitution is limited to actual loss that the defendant is responsible for paying back. *See United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001) ("An award of restitution must be based on the amount of loss actually caused by the defendant's conduct.").  As noted, the Government presented evidence that the IRS paid Young and her husband a total of $415,070 in refunds based on false tax returns.

identity theft and did not authorize the returns. Doc. 11-6 at 12. Agent Forte described the stolen identification information found during a search of Young's residence and stated that Young used this information to file more than 300 false returns. Doc. 11-6 at 13–17. As noted above, exhibits introduced at the sentencing hearing reflected that Young and her husband filed the fraudulent returns using the names, birthdates, and Social Security numbers of more than 250 people whose identities they had stolen. *See* Doc. 11-5 at 1–5.

Young seems to suggest that her counsel should have argued that the Government had to present testimony at sentencing from each of the individuals whose identity she stole or else obtain certified statements from those individuals. *See* Doc. 2 at 5–6 (arguing that the Government "provided no witnesses or affidavits from any 'victims'" at the sentencing hearing). However, the Government is not required to obtain statements or testimony from all identity-theft victims since relevant conduct under the Sentencing Guidelines need only be proven by a preponderance of the evidence. *See United States v. Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006). As described above, the Government presented ample evidence that Young's criminal conduct involved 250 or more victims. As with her claim regarding the loss amount attributed to her, Young sets forth no arguments or evidence that her counsel might have offered in opposing the district court's finding concerning the number of her victims, and she points to no facts indicating that the court erred in this regard. Failing to show deficient performance by counsel and resulting prejudice, Young is not entitled to relief based on this claim of ineffective assistance of counsel.

Young also maintains that her counsel was ineffective for failing to argue that Application Note 2 to U.S.S.G. § 2B1.6 precluded any enhancement in her case for the number of victims. Doc. 2 at 6–7. The Sentencing Guidelines provide that the sentence for a defendant convicted of aggravated identity theft is the statutory term of imprisonment. U.S.S.G. § 2B1.6. The Guidelines

commentary elaborates:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense. A sentence under this guideline accounts for this factor for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7).

U.S.S.G. § 2B1.6, cmt. n.2. "Means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . (A) name, social security number, [or] date of birth . . . ." 18 U.S.C. § 1028(d)(7)(A).

The Eleventh Circuit has held that Application Note 2 precludes the application of additional enhancements only if those enhancements pertain specifically to the "transfer, possession, or use of a means of identification." *See United States v. Cruz*, 713 F.3d 600, 607–08 (11th Cir. 2013) (affirming the application of the device-making-equipment enhancements set forth in § 2B1.1(b)(10)(A)(i), which did not concern the use of a means of identification, to the base offense levels associated with § 1028A, since the plain language of Application Note 2 did not bar the application of all "relevant conduct" enhancements); *United States v. Charles,* 757 F.3d 1222, 1227 (11th Cir. 2014) (reversing the application of a § 2B1.1(b)(11)(B)(i) trafficking-of-an-unauthorized-access-device enhancement to a defendant also convicted under 18 U.S.C. § 1028A). Here, the enhancement imposed on Young for the number of victims did not pertain specifically to the "transfer, possession, or use of a means of identification." Instead, the enhancement was predicated only on the number of victims—not victimization by use of a means of identification. Thus, Application Note 2 does not apply to the victim enhancement in Young's case. *See, e.g., United States v. Davis*, 586 F. App'x 534, 539 (11th Cir. 2014); *United States v. Anderson*, 532 F.

App'x 373, 378–79 (4th Cir. 2013). Moreover, the victim enhancement in Young's case was used to calculate her guidelines regarding the conspiracy count, not the aggravated-identity-theft count. Consequently, Young's trial counsel was not ineffective for failing to argue that Application Note 2 to § 2B1.6 precluded any enhancement in her case for the number of victims because this argument would have been meritless.

### 3.    *Counsel's Failure to Submit Mitigating Evidence*

Young contends that her trial counsel rendered ineffective assistance by failing to submit mitigating evidence in objecting to the sophisticated means enhancement at sentencing. Doc. 1 at 5–6; Doc. 2 at 7–8.

Young received a two-level sentence enhancement under U.S.S.G. § 2B1.1(b)(10)(C), which applies if the offense "involved sophisticated means." *See* PSR at 9, ¶ 24. Young's trial counsel objected to the application of this enhancement in her case and argued strenuously against it. *See* Doc. 11-6 at 26–35, 56–59 & 61–64. The district court, however, overruled the objection. Young's counsel then pursued this issue on direct appeal. Ultimately, the Eleventh Circuit affirmed the district court's application of the enhancement. *See United States v. Young*, 568 F. App'x 556 (11th Cir. 2014).

Young sets forth no other arguments or mitigating evidence that her counsel might have offered in opposing the district court's application of the sophisticated means enhancement. Further, the enhancement was appropriate in Young's case. As the Eleventh Circuit stated in affirming the district court:

> The district court did not clearly err by applying a two-level increase for the use of sophisticated means. The conspiracy spanned three years and involved over 250 stolen identities and 380 fraudulent tax returns. First, the Youngs used stolen identities from multiple sources which were difficult to trace. Second, they obtained prepaid debit cards to use for the fraudulent refund money, and, at times, received loans in anticipation of the refunds, making it more difficult to trace the

>proceeds. Third, they assigned different names to the tax returns and the related debit cards, making the fraud more difficult to investigate. Fourth, they used multiple addresses to receive the prepaid debit cards by mail, which required tracking the refund delivery status to ensure timely collection of the debit cards from the mail. Because the totality of the tax fraud conspiracy demonstrated the use of sophisticated means, the district court did not clearly err by applying a two-level increase to the Youngs' base level offenses

568 F. App'x at 557–58.

Failing to show deficient performance by counsel and resulting prejudice, Young is not entitled to relief based on this claim of ineffective assistance of counsel.

**C.** *Alleyne* **Claim**

Young claims her sentence violated the Supreme Court's holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), because the district court applied sentencing enhancements based on judicial factfinding. Doc. 1 at 8; Doc. 2 at 8–10 & 12–15.

In *Alleyne*, the Court held that the enhancements described in 18 U.S.C. § 924(c)(1)(A)(ii) and (iii), for brandishing or discharging a firearm, triggering higher mandatory minimum sentences, must be treated as elements of separate, aggravated offenses, to be alleged in the indictment and proved beyond a reasonable doubt. 133 S. Ct. at 2161–63. More broadly, the Supreme Court held that, except for prior convictions, "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury" or admitted by the defendant. *Id*. at 2155. *Alleyne* thus overruled *Harris v. United States*, 536 U.S. 545, 557 (2002), which had earlier held that facts found by a judge could increase the statutory mandatory minimum sentence applicable to a defendant. *Alleyne*, 133 S. Ct. at 2155.

Young's *Alleyne*'s claim is without merit. Regarding the Sentencing Guideline enhancements applied to Young, *Alleyne* expressly does not apply to factual determinations affecting only a defendant's sentencing guidelines range, but instead applies only to determinations

affecting the applicability of a *statutory* mandatory minimum sentence. *Id*. at 2163. As to Young's mandatory two-year sentence for aggravated identity theft, by pleading guilty to the aggravated-identity-theft count, Young admitted to all facts necessary to allow the district court to impose the mandatory two-year sentence for that offense. Thus, Young's mandatory minimum sentence for aggravated identity theft was not based on judicial factfinding, but rather on her own admissions to having committed all elements of the offense. Therefore, Young raises no meritorious *Alleyne* claim, and she is entitled to no relief on this basis.

**D.     Mitigating Role Claim in Amendment**

In an amendment to her § 2255 motion, Young suggests she is entitled to a retroactive sentence reduction in light of the November 1, 2015 amendment (Amendment 794) to the mitigating role adjustment in U.S.S.G. § 3B1.2.[5] Doc. 16.

Nothing in Amendment 794 entitles Young to a sentence reduction. That amendment merely "clarified the factors to consider for a minor-role adjustment"—it did not substantively change § 3B1.2. *United States v. Casas*, 632 F. App'x 1003, 1004 (11th Cir. 2015); *Sapp v. United States*, 2016 WL 4744159 at *1 (S.D. Ga. Sept. 12, 2016); *see also United States v. Quintero-Leyva*, 823 F.3d 519, 523 (9th Cir. 2016) (holding that Amendment 794 may be applied retroactively on direct appeals). The Sentencing Commission specifically explained that

---

[5] An Application Note for amended § 3B1.2 states that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered" for the mitigating role reduction, and "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." U.S.S.G. § 3B1.2, cmt. n.3(C). The amendment also included a non-exhaustive list of factors a court "should consider" in determining whether to apply a minor role reduction. The factors are:
    (i) the degree to which the defendant understood the scope and structure of the criminal activity;
    (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
    (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
    (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
    (v) the degree to which the defendant stood to benefit from the criminal activity.
U.S.S.G. § 3B1.2, cmt. n.3(C).

Amendment 794 is intended only as a clarifying amendment. *See* U.S.S.G. Supp. App. C, Amend. 794 (Reason for Amend.) ("This amendment provides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies.").

"The threshold inquiry," therefore, "is whether [Young's] claim that h[er] sentence is contrary to a subsequently enacted clarifying amendment is cognizable under § 2255." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998). A comparison of the circumstances in *Burke* and in the instant case confirms that § 2255 relief is not available to Young based on this claim. After sentencing in both *Burke* and in Young's case, the Sentencing Commission added a clarifying amendment to the Guidelines, and the petitioners moved under § 2255 to modify their sentences based on the change. However, because "§ 2255 is not a substitute for direct appeal," nonconstitutional claims such as clarifying amendments to the Guidelines "can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Burke*, 152 F.3d at 1331 (quoting *Reed v. Farley*, 512 U.S. 339, 348 (1994)).

"Insofar as amendment [794] is a clarifying amendment effecting no change in the substantive law," Young "was afforded the opportunity to" challenge the denial of a minor role adjustment "at h[er] original sentencing and on direct appeal." *Burke*, 152 F.3d at 1332. She failed to do so. "Considering all of the circumstances, [the court] cannot say that the alleged misapplication of the sentencing guidelines in this case was fundamentally unfair or that it constituted a miscarriage of justice sufficient to form the basis for collateral relief." *Id*. Because Young did not raise the minor-participant issue in prior proceedings and because Amendment 794 would not impact her original sentencing in a way that constitutes a complete miscarriage of

13

justice, Young is not entitled to § 2255 relief on this claim. Moreover, Young would not have been entitled to a minor role adjustment even if the issue had been considered at her sentencing in light of Amendment 794, as it is abundantly clear from the record that Young orchestrated the tax fraud scheme and that she effectively masterminded the conspiracy to which she and her co-conspirator husband pled guilty.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Young be DENIED and this case DISMISSED with prejudice.

It is further ORDERED that the parties shall file any objections to this recommendation or before **February 14, 2017**. A party must specifically identify the factual findings and legal conclusions in the recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *Stein v. Lanning Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 31st day of January, 2017.

*/s/ Gray M. Borden*
UNITED STATES MAGISTRATE JUDGE