IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARY YOUNG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-CV-1209-WKW |
| | ) | [WO] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

# **ORDER**

Mary Young was sentenced to a bottom-of-the-guidelines sentence of 87 months for being, along with her husband and son, a tax fraudster. It is undisputed that she participated in a scheme to steal over 250 personal identities and file over 380 false tax returns over a 3-year period. She used a sophisticated scheme of prepaid debit cards to steal at least $415,000 from the Internal Revenue Service (her attempted theft was over $721,000).

Not content to sit on her sizeable stash, Mary Young and some members of her family spent considerable time at the Wind Creek Casinos in Wetumpka and Montgomery, Alabama, where she obtained priority status and many perks. She and her husband, Christian Young, each gambled approximately two million dollars. They also used the proceeds of their theft to purchase a Mercedes E-class sedan,

expensive rims, and other vehicles.  She is subject to a restitution order of $415,000 to the Internal Revenue Service.

Young appealed to the Eleventh Circuit and lost.  (*See* 2:12cr228, Doc. # 220.)  Before the court now is her 28 U.S.C. 2255 petition, collaterally attacking her final judgment.  On January 31, 2017, the Magistrate Judge filed a Recommendation.  (Doc. # 21.)  Young filed objections to the Recommendation on February 13, 2017.  (Doc. # 22.)  The court has reviewed the record independently and has made a *de novo* determination as to those portions of the Recommendation to which Petitioner objects.  For the reasons set forth below, Petitioner's objections are due to be overruled.

Petitioner's motion, brought under 28 U.S.C. § 2255, contests the validity of the criminal sentence she received in February 2014 after pleading guilty to one count of conspiracy to defraud the government with respect to claims in violation of 18 U.S.C. § 286 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A.  The bases for her motion are: (1) ineffective assistance of counsel for failure to object to (a) the number of victims attributed to her, (b) the amount of loss attributed to her, and (c) the sophisticated means enhancement, all of which were assessed at sentencing; and (2) the claim that her sentence violated the Supreme Court's holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  Petitioner objected to the Recommendation's findings as to (1)(a) and (b) only.  (*See* Doc. #

22.) After an independent review of the record, the court adopts the Magistrate Judge's findings as to (1)(c) and (2), and addresses Petitioner's objections to the Recommendation's findings as to two of her claims for ineffective assistance of counsel ((1)(a) and (b)).

Claims for ineffective assistance of counsel require a showing of both ineffectiveness and prejudice. On the ineffectiveness prong, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). On the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because Petitioner's objections do not undermine the determinations and conclusions reached by the Magistrate Judge, they are due to be overruled.

First, Petitioner contends that her attorney was constitutionally ineffective for failing to object to the number of victims attributed to her crime, which was the basis of a sentencing enhancement. Petitioner's claim raises a new argument that an *Ex Post Facto* violation occurred when the sentencing court applied the 2014 Guidelines Manual to determine the number of victims under U.S.S.G.

3

§ 2B1.1(b)(2),[1] rather than the 2008 edition of the Guidelines Manual effective November 1, 2008 ("2008 Guidelines Manual"). Beginning in the 2009 edition of the Guidelines Manual (effective November 1, 2009), § 2B1.1(b)(2) has contained an expanded definition of "victim" that includes not only any individual who incurred actual pecuniary loss but also "any individual whose means of identification was used unlawfully or without authority." *See id.* § 2B1.1 cmt. n. 4(E). According to Petitioner, her crimes commenced as early as 2009 (*i.e.*, "between 2009–11"), thus, allegedly supporting the use of § 2B1.1(b)(2)'s narrower definition of "victim" in the 2008 Guidelines Manual. Petitioner argues that application of this definition would have yielded fewer victims and, consequently, a lower guideline range.

Because Petitioner raises this argument for the first time in her objections to the Magistrate Judge's Recommendation, the court is under no obligation to consider it. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[D]istrict court has discretion to decline to consider a party's argument when that argument was not

---

[1] The Guidelines Manual's "one-book" rule provides that, generally, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," § 1B1.11(a), unless its use "would violate the ex post facto clause," in which event the court should use the manual "in effect on the date the offense of conviction was committed," § 1B1.11(b)(1). However, "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." U.S.S.G. §1B1.11(b)(3).

Contrary to Petitioner's contention that the 2014 Guidelines Manual was used, the presentence investigation report indicates that the sentence was calculated using the 2013 Guidelines Manual (*see* 2:12cr228, Doc. # 189, at 9), which was the version of the Guidelines Manual in effect at the time of her sentencing in February 2014.

first presented to the magistrate judge."). But the objection lacks merit regardless. As an initial matter, the superseding indictment and presentence investigation report (*see* Docs. # 11-2, at 2; 11-5, at 2), reflect that the conspiracy began in 2010, not 2009, and, thus, the broader definition of "victim" in § 2B1.1(b)(2) was in effect during the entirety of the conspiracy. Even assuming that Petitioner's sentence encompassed acts that occurred in 2009 prior to the expansion of the definition of "victim" in § 2B1.1(b)(2), the allegedly increased guidelines level resulting from the sentencing court's use of the Guidelines Manual in effect on the date of sentencing does not pose an *ex post facto* problem.

The *Ex Post Facto* Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). An *Ex Post Facto* Clause violation occurs "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Peugh v. United States*, 133 S. Ct. 2072, 2078 (2013). The purpose of the clause is not to guarantee "an individual's right to less punishment," *Weaver*, 450 U.S. at 30, but rather to ensure that "individuals have fair warning of applicable laws," *Peugh*, 133 S. Ct. at 2085. The *Ex Post Facto* Clause is not violated, however, where the last act of the conspiracy for which the defendant was convicted occurs after the effective date of

the increased guidelines range, even though other acts occurred prior to the effective date. *See United States v. Aviles*, 518 F.3d 1228, 1230 (11th Cir. 2008) (holding that "[a] defendant who is convicted of a conspiracy that began before, but continued after, a Guidelines amendment became effective may be sentenced based on the amendment without triggering any *ex post facto* concerns").

In this instance, the defendant has fair warning of the penal consequences of his continued criminal activities. For this reason, the Guidelines Manual's "one-book" rule—including the provision that, "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses"—satisfies *ex post facto* concerns. *See United States v. Bailey*, 123 F.3d 1381, 1404–05 (11th Cir. 1997) (holding that the "one-book" rule does not run afoul of the *Ex Post Facto* Clause because it puts a defendant on notice that "when he continues to commit related crimes[,] . . . he risks sentencing for all of his offenses under the latest, amended Sentencing Guidelines Manual"); *see also id.* ("Analogous to a continuous criminal offense, like conspiracy, the one book rule provides notice that otherwise discrete criminal acts will be sentenced together under the Guidelines in effect at the time of the last of those acts."); *United States v. York*, 428 F.3d 1325, 1337 (11th Cir. 2005) ("[I]f related crimes are

committed in a series, the date of the crime at the end of the series governs the date of the Manual to be used.").

Based on the foregoing, the ending date of Petitioner's conspiracy, not its beginning date, is what matters for purposes of analyzing whether the use of a particular Guidelines Manual violates the *Ex Post Facto* Clause.  By the time the conspiracy ended in 2012, the Guidelines Manual had expanded § 2B1.1(b)(2)'s definition of "victim."  All versions of the Guidelines Manual in effect after the conspiracy ended contain the same expanded definition of "victim."  And notably, Petitioner does not argue that using the Guidelines Manual that was in effect when the conspiracy ended, instead of the 2013 Guidelines Manual, which was in effect on the date of sentencing, would yield a different sentencing outcome.  *See United States v. Bane*, 720 F.3d 818, 823 n.2 (11th Cir. 2013) (concluding that, because the criminal conduct ended in 2004, after the challenged guideline amendments had taken effect, the use of the 2010 Guidelines Manual in effect on the date of sentencing did not violate the *Ex Post Facto* Clause and noting that the defendant had not argued that the 2004 manual, rather than the 2010 manual, would have "change[d] the result").

Accordingly, because Petitioner has not shown that the sentencing court's use of the 2013 Guidelines Manual violated the *Ex Post Facto* Clause, it follows that she

has not demonstrated that her counsel's failure to object to the calculation of the number of victims under § 2B1.1(b)(2) was ineffective.

Second, Petitioner contends that her attorney was constitutionally ineffective when he failed to object to the amount of loss attributed to her, which was the basis of another sentencing enhancement. She asserts that her defense attorney failed to "properly investigate[ ]" the amount of loss for himself and instead "relied on the government['s] assertions." (Doc. # 22, at 6–7.) But she has not plausibly shown that the government's calculations were erroneous or that additional investigation by counsel would have yielded a decreased loss amount. Therefore, Petitioner has failed to satisfy *Strickland*'s test on both prongs as to this ineffective assistance of counsel claim.

Upon careful consideration, it is ORDERED that Petitioner's objections are overruled; the Recommendation is ADOPTED; Petitioner's § 2255 motion is DENIED; and this case is DISMISSED with prejudice.

A final judgment will be entered separately.

DONE this 9th day of March, 2017.

        /s/ W. Keith Watkins  
CHIEF UNITED STATES DISTRICT JUDGE